# Staunton

## FRED FUNK v. COMMONWEALTH.

September 20, 1934.

Present, All the Justices.

The opinion states the case.

*D. F. Kennedy,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Edwin H. Gibson, Assistant Attorney-General,* for the Commonwealth.

GREGORY, J., delivered the opinion of the court.

Funk was convicted by a jury of murder in the second degree and his punishment fixed at eight years in the penitentiary. The trial court refused to disturb the verdict.

There was conflict in the testimony. The testimony for

the accused placed all the blame for the killing upon the deceased, while the testimony of the Commonwealth tended to support the theory that Funk intentionally shot and killed the deceased. The jury disregarded the claim of the accused that he shot the deceased in defense of himself or accidentally.

For the purpose of a decision of this case, the accused stands here practically demurring to the evidence of the Commonwealth. In other words, if the verdict is supported by substantial and credible evidence, it will have to be upheld, unless there is some prejudicial error of law which will warrant the court in setting it aside and reversing the judgment.

██ The testimony offered for the Commonwealth and upon which we think the verdict and judgment are supported shows these facts: The accused was working for his grandfather as a clerk in a store and restaurant. The grandfather, at the time, was sick and confined in a bedroom in the rear of the store. The accused at the time was in charge of the place of business. He was sitting on a bench with one Sam Newson when one Harlan Sexton came in with his brother. Harlan, who was later shot and killed by the accused, sat on the bench between the accused and Sam Newson, put his arm around Newson's neck and "rubbed his fist" under Newson's nose. The accused asked Harlan Sexton to be quiet and to create no difficulty in the building. Sexton became angry with the accused and told him "that if he had the authority, to throw him out of the building." From this point on the evidence is very conflicting. Two witnesses for the Commonwealth, one of them a brother of the man who was killed, say that Sexton and the accused arose from the bench; that they were three or four feet apart; that Sexton did not advance upon the accused; that when Sexton arose from the bench the accused took a pistol from under his clothes and put it in his hip pocket; that he drew the pistol and shot down into the floor; that the accused was backing away and some one present was requesting that he put the pistol away. In a very short time after

the first shot was fired into the floor the accused raised the pistol and, while it was "pointed" at Sexton, fired it twice into his body. Sexton died from the wounds.

From this evidence, which the jury evidently believed, the killing was neither accidental nor in self-defense. Of course there were several witnesses introduced by the accused who testified that Sexton brought on the difficulty and was striking and advancing upon the accused when the shots were fired, but the jury did not accept their testimony. We think the verdict was sufficiently supported by the evidence.

■ The attorney for the Commonwealth made the following statement in his opening remarks to the jury: "Gentlemen of the jury, the first thing I want to relate to you in this case is, that this is the second murder we have had at this place and it is a hard place to get evidence." The attorney for the accused objected to the statement on the ground "that it was improper and prejudicial." The court said: "Don't tell that. Gentlemen, you will not consider that; that goes out."

Counsel for the accused made no motion to discharge the jury because of the improper remarks of the attorney for the Commonwealth, but apparently was satisfied with the ruling of the court whereby the jury were instructed to disregard the improper remarks. He acquiesced in it. The next time the question was raised was upon the motion to set aside the verdict.

The statement in question was improper, and the attorney for the Commonwealth went beyond what is legitimate in making it. However he obeyed the ruling of the court and did not refer to the matter again. The court promptly corrected the error, and we do not think under the circumstances the statement was calculated to improperly influence the jury against the accused. In addition to this the accused failed to move for a discharge of the jury and a mistrial.

■■ Each case of this kind must be considered upon its own peculiar facts. The general principle applicable is expressed in *Spencer* v. *Commonwealth,* 143 Va. 531, 129

S. E. 351, 352, in this language: "The decisions in Virginia and elsewhere support these two general propositions:

"1. That a new trial may be allowed where the court has failed or refused to properly check improper remarks or argument of counsel, or to properly instruct the jury thereon, but the statements must be fairly calculated to improperly influence the jury. *Mullins' Case,* 113 Va. 792, 75 S. E. 193; *McCoy's Case,* 125 Va. 778, 99 S. E. 644.

"2. That there are cases in which the effect of statements of counsel cannot be adequately overcome by direction to the jury to disregard the objectionable statements. *Washington & O. D. Ry.* v. *Ward's Adm'r,* 119 Va. 339, 89 S. E. 140; *Rinehart & Dennis Co.* v. *Brown,* 137 Va. 675, 120 S. E. 269; *Harris* v. *Commonwealth,* 133 Va. 700, 112 S. E. 753."

In the case at bar, we are of opinion that the improper statement of the Commonwealth's attorney would not justify the court in reversing the judgment.

██ No instruction defining manslaughter was given the jury. Neither the Commonwealth nor the accused offered any such instruction. The objection offered by the accused to the instructions given was "that the same did not correctly state the law applicable to this case and were not supported by the evidence." This was not a compliance with Rule XXII of this court. But, aside from his failure to comply with Rule XXII, the instructions are the ordinary ones usually given in cases of this kind, and they appear to be correct statements of the law. In any event, if they are erroneous the error has not been pointed out.

The failure to give the jury an instruction defining manslaughter, if it be assumed that such an instruction would have been proper, was due to the fact that neither the Commonwealth's attorney nor the attorney for the accused asked for it. They evidently thought that the case was one of murder or excusable homicide.

Our attention is directed to the recent case of *Tucker* v. *Commonwealth,* 159 Va. 1048, 167 S. E. 253, as authority for the point made that an instruction defining manslaugh-

ter should have been given.  Aside from the great difference in the facts between that case and the case at bar, in that case Rule XXII was complied with, whereas in the case at bar it was ignored.

The judgment is affirmed.

*Affirmed.*